69 A.3d 478

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Jonathan Daniel SPERLING.**

**Misc. Docket AG No. 82, Sept. Term, 2011.**

Court of Appeals of Maryland.

July 5, 2013.

472

James C. Gaither, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland) for Petitioner.

Robert W. Hesselbacher, Jr. (Wright, Constable & Skeen, LLP, Baltimore, MD) for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BATTAGLIA, J.

Jonathan Sperling, Respondent, was admitted to the Bar of this Court on June 24, 1998. On February 16, 2012, the Attorney Grievance Commission ("Bar Counsel"), Petitioner, acting pursuant to Rule 16–751(a),[1] filed a "Petition for Disciplinary or Remedial Action" against Jonathan,[2] relative to his representation of Victoria Brunson–Hill as the plaintiff in an automobile accident case.

In July of 1998, Jonathan had been a practicing attorney for approximately one month when Ms. Brunson–Hill retained the law firm of Sperling and Framm, in which Leonard Sperling, Jonathan's father, was a partner, to represent her after she had been struck by an automobile in a public parking lot in Prince George's County. On November 30, 1998, Sperling and Framm filed suit on Ms. Brunson–Hill's behalf in the Circuit Court for Montgomery County, naming Greta Renee Frank as the defendant. Jonathan Sperling, although having never entered his appearance, was responsible for the day-to-day tasks in the case, such as attending pre-trial conferences, drafting discovery, and engaging and interacting with a process server. Ms. Frank was never served, and on October 22, 1999, the suit was dismissed.

Subsequently, in March of 2000, Leonard Sperling filed a Motion for Reconsideration of Dismissal, which was granted on April 3, 2000. A pre-trial conference was scheduled for May 5, 2000, but Ms. Frank, yet to be served, failed to appear, and the conference was rescheduled for August 4, 2000, and again

---

1. Rule 16–751 provides in pertinent part:

 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval or direction of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. Because there are a number of Sperlings to which we make reference, we shall refer to Jonathan Sperling as "Jonathan."

for September 29, 2000. When no one appeared for the latter of the conferences, the case was again dismissed, although Ms. Brunson–Hill was never informed of the dismissal.

On February 22, 2008, Ms. Brunson–Hill e-mailed Jonathan to inquire about the status of her case, to which he responded by e-mail three days later that the case was "still making its rounds with the clerk and she assures me she is working on it." Ms. Brunson–Hill was not told that her case had been dismissed, even though Jonathan became aware of the dismissal sometime prior to sending his response to Ms. Brunson–Hill.

Thereafter, on April 11, 2008, the Sperling Law Office, as it was then known, filed a Motion to Re-open Case. That pleading stated in pertinent part:

That Plaintiff's counsel has been in constant contact with the clerk's office, reported the events that had transpired within the Court and was told the matter would be looked into and fixed and that Plaintiff's counsel should, "not worry, it would be fixed."

The Motion also asserted "[t]hat the clerk's office did not fix the error, despite assurances to the contrary, and as a result the case was closed." The Motion further stated that "Plaintiff's counsel has a good idea of where the Defendant is and if the matter were re-opened, Plaintiff's counsel would be able to proceed with due haste in completing this matter." Jonathan attached an affidavit to the Motion to Re-open Case in which he attested that "I am familiar with this matter and that all statements made in the Motion are correct to the best of my knowledge and belief."

On May 5, 2008, the Sperling Law Office filed a Supplemental Motion to Re-open Case. That motion reiterated the statements regarding "constant contact" with the clerk's office, that the clerk's office assured plaintiff's counsel that the situation would be fixed, and that plaintiff's counsel had a good idea where the defendant was located. Again, Jonathan attached a verified affidavit to the Supplemental Motion to Re-open Case, attesting that he was "familiar with this matter and that all

statements made in the Motion are correct to the best of my knowledge." Jonathan also asserted in the affidavit that he "contacted the clerk's office on numerous occasions, explaining the error and was assured on numerous occasions the matter would be fixed and re-opened." Both Motions were denied.

Ms. Brunson–Hill filed a complaint with Bar Counsel regarding Jonathan's handling of her case. Bar Counsel charged Jonathan with violations of the Maryland Lawyers' Rules of Professional Conduct 1.1 (Competence),[3] 1.2(a) (Scope of Representation and Allocation of Authority Between Client and Lawyer),[4] 1.3 (Diligence),[5] 1.4(a)(1)–(3) and (b) (Communication),[6] 3.1 (Meritorious Claims and Contentions),[7] 3.3(a)(1)

---

**3.** Rule 1.1 provides:
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**4.** Rule 1.2(a) provides:
(a) Subject to paragraphs (c) and (d) a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

**5.** Rule 1.3 provides:
A lawyer shall act with reasonable diligence and promptness in representing a client.

**6.** Rule 1.4 provides:
(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
\* \* \*
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**7.** Bar Counsel, during the evidentiary hearing on the Petition, abandoned the charge that Jonathan violated Rule 3.1. Consequently, the hearing judge made no findings or conclusions regarding Rule 3.1.

and (a)(4) (Candor Toward the Tribunal),[8] 4.1(a)(1) (Truthfulness in Statements to Others),[9] and 8.4(a), (c), and (d) (Misconduct).[10]

By an Order dated February 22, 2012, we referred the Petition to Judge Judith C. Ensor of the Circuit Court for Baltimore County. Judge Ensor held a hearing on August 14, 2012, during which Ms. Brunson–Hill, Jonathan Sperling, Leonard Sperling, and Samuel Sperling testified. Documentation of communications between Ms. Brunson–Hill and Jonathan was entered into evidence as well as the deposition of Loretta E. Knight, who was the manager of the civil department of the Clerk's Office in the Circuit Court for Montgomery County from 1990 until 2006, at which time she was elected Clerk of the Circuit Court for Montgomery County. Judge Ensor issued the following findings of fact and conclu-

---

**8.** Rule 3.3(a) provides:

(a) A lawyer shall not knowingly:
 (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

\* \* \*

 (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

**9.** The hearing judge, in her findings, found a violation of Rule 4.1, but in the conclusions of law stated there was no violation of Rule 4.1. We will not address the charge that Jonathan violated Rule 4.1 because, in his exceptions, Bar Counsel "respectfully request[ed] that this Honorable Court consider the charge that Respondent violated Rule 4.1 abandoned."

**10.** Rule 8.4 provides in pertinent part:

It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice[.]

sions of law, in which she found Jonathan violated Rules 1.1, 1.
3, 1.4(a) and (b), 3.3(a), and 8.4(a), (c), and (d), but did not
violate Rule 1.2:

## *FINDINGS OF FACT* [11]

Jonathan graduated in December, 1997, from the University of Maryland School of Law, passed the bar on his first attempt, and was sworn in as a member of the Maryland Bar on June 24, 1998. Since that time, he essentially has worked for his father, Leonard Sperling. When Jonathan first began with the firm, it was known as Sperling and Framm. In 2003, the practice became known as the Sperling Law Firm, P.C. Since joining his father's firm, Jonathan has maintained a general practice; he has represented clients in both the civil and criminal arenas.

Jonathan had been practicing law for roughly four weeks when Victoria Brunson–Hill (sometimes "Ms. Brunson–Hill") initially met with Leonard Sperling in late July, 1998. At that time, Ms. Brunson–Hill retained Leonard Sperling and the law firm of Sperling and Framm to represent her in connection with a claim for personal injuries. Leonard "signed her up" with the firm and filed suit on Ms. Brunson–Hill's behalf on November 30, 1998. The suit was filed in the Circuit Court for Montgomery County, named Greta Renee Frank (sometimes "Ms. Frank") as a defendant, and sought damages as a result of injuries sustained on July 12, 1998. More specifically, in the complaint, it was alleged that, while walking at or near a parking lot located in Prince George's County, Ms. Brunson–Hill was struck by a vehicle driven by Ms. Frank. Ms. Brunson–Hill claimed to have been permanently injured as a result of the incident. She sought $945,000 in damages and requested that the matter be tried before a jury.

The clerk's office sent notice on December 1, 1998, that the matter was scheduled for a settlement/pre-trial confer-

---

11. References to the record and internal footnotes have been omitted.

ence on March 5, 1999. As Ms. Frank had not been served and was not present, the conference was postponed and reset for October 22, 1999. Four days prior to the new conference date, however, on October 18, 1999, the clerk's office sent a notice of contemplated dismissal pursuant to Maryland Rule 2–507. When no one appeared for the October 22, 1999, conference, the case was dismissed. On October 26, 1999, in response to the notice vis-á-vis contemplated dismissal, Leonard Sperling filed a pleading entitled "Motion to Dismiss Contemplated 2–507 Dismissal." By the time that pleading was filed, the case had been dismissed as a result of the parties' failure to appear at the October 22, 1999, settlement/pre-trial conference. Therefore, when the Honorable Paul H. Weinstein reviewed the Motion to Dismiss Contemplated 2–507 Dismissal on November 8, 1999, he determined that it was moot.

As a result of this finding, on December 28, 1999, Leonard Sperling filed a motion to reconsider dismissal under Maryland Rule 2–507. In that pleading, Leonard indicated that "the Plaintiffs' Counsel never received a copy of a hearing date for the said Motion." Leonard went on to say that "Plaintiff's Counsel received a notice from the Court that the above matter had been dismissed on October 22, 1999, because Plaintiff did not appear for the said hearing." Leonard asked that the Court vacate its dismissal and reinstate the case.

On March 29, 2000, Leonard Sperling filed a pleading entitled "Motion for Reconsideration of Dismissal," and indicated that it was a supplement to the initial motion. In the supplement, Leonard stated that, since Ms. Frank had not been served, he "assumed" that "he was not expected to be present at a pre-trial conference." Leonard also indicated that he had spoken with the clerk's office and had been "informed that it was not necessary for the Plaintiff or Plaintiff's counsel to be present" for the pre-trial conference. The Motion for Reconsideration of Dismissal was granted by Judge Weinstein. The corresponding order was entered on April 5, 2000. In the same order, Judge Wein-

stein provided a new settlement/pre-trial conference date of May 5, 2000.

On May 5, 2000, Ms. Frank again failed to appear as she had not yet been served. The case was then set for a scheduling conference on August 4, 2000. The case was again re-set, and this time scheduled for a conference on September 29, 2000. The case was called on September 29, 2000, but the parties failed to appear; the matter was dismissed.

More than three years later, as a result of Leonard's temporary suspension from the practice of law, Samuel Sperling moved to enter his appearance and strike that of his father. Four years after that, on April 11, 2008, Plaintiff's Motion to Re-open Case was filed. In that pleading, among other things, counsel indicated that he had "been in constant contact with the clerk's office, reported the events that had transpired within the Court and was told the matter would be looked into and fixed." Moreover, plaintiff's counsel indicated that he was told he should "not worry, it would be fixed." Importantly, Jonathan Sperling provided an affidavit in which he vouched for the truthfulness of the statements made in the motion.

A Supplemental Motion to Re-open Case was filed on May 5, 2008. In the Supplemental Motion, plaintiff's counsel reiterated that he had "been in constant contact with the clerk's office." He added that he "made repeated calls regarding this matter, went over the previous calls, the matters discussed in the Hearings and was assured the matter would be fixed." Jonathan Sperling provided an accompanying affidavit in which he affirmed that he was "extremely familiar" with the matter. He indicated that he had "contacted the clerk's office on numerous occasions, explaining the error and was assured on numerous occasions the matter would be fixed and reopened." The motion to re-open was denied on May 13, 2008, with notice sent to Samuel Sperling.

According to Jonathan, he became involved in Ms. Brunson–Hill's case in August, 1998. By his own admission,

Jonathan was "assigned principal responsibility for the day-to-day work on the case." Jonathan testified, however, that, by "day-to-day work," he meant that he drafted the discovery and made sure that the process server was engaged and diligent in his efforts to locate Ms. Frank. Jonathan also testified that he went to at least some of the pre-trial settlement conferences that had been scheduled by the Court. Other attorneys associated with the law firm worked on the case as well.

Jonathan never told Ms. Brunson–Hill that her case had been dismissed. He never told her that the statute of limitations had run. In fact, Ms. Brunson–Hill learned that the case had been dismissed only after she performed an internet inquiry through the Maryland Judiciary Case Search. She then followed up with Jonathan, specifically asking about the status of her case. Jonathan responded to her via email dated February 25, 2008, simply indicating that the case "is still making its rounds with the clerk and she assures me she is working on it."

Ms. Brunson–Hill was not the only individual concerned about the status of the case. Her treating physician, Dr. Lawrence F. Honick, made inquiry through his office staff. Specifically, on December 26, 2001, Lisa Kirkpatrick faxed paperwork to Leonard Sperling. On the fax cover sheet, Ms. Kirkpatrick mentioned that, back on April 5, 2001, "Mr. Sperling indicated that [the] case was still pending." Ms. Kirkpatrick also mentioned that she had "called many times and left many messages without an answer." There is a response written on the fax cover sheet itself. In all capital letters it is written "THIS CASE IS STILL PENDING IN COURT."

A similar inquiry from Dr. Honick's office was sent on November 13, 2002. Jonathan's response was provided the same day. He wrote: "THIS CASE STILL IN COURT!" There was yet another inquiry from Lisa Kirkpatrick on June 21, 2005. This time, the correspondence was sent to the attention of Jonathan Sperling. In the body of the paperwork, Ms. Kirkpatrick stated that, on May 5, 2005,

Jonathan "indicated to Dr. Honick that this account would be going to court soon. What is the status?" Another request for this same information was sent on August 3, 2005. Ms. Kirkpatrick sent yet another inquiry on May 16, 2006.

With respect to Jonathan's alleged numerous conversations with the clerk's office, the Commission submitted the deposition of Loretta Knight, who was elected Clerk of the Circuit Court in 2006. Prior to that, she was a manager in the civil department. Ms. Knight testified that, back in 2000, there were in the neighborhood of 40 to 45 people working in the civil department, of whom perhaps 30 were trained to answer telephone inquiries. Ms. Knight indicated that there were periodic assignments to phone duty. According to Ms. Knight, if asked, a clerk was permitted to provide the status of any given case. Ms. Knight was adamant, however, that no clerk was authorized to provide additional information. She did indicate that a clerk might direct additional inquiries to a specific judge.

Jonathan Sperling never formally entered his appearance at any time during the pendency of the Montgomery County case. All pleadings were submitted under the signature of either Leonard Sperling or Samuel Sperling. All court notices were sent to either Leonard Sperling or Samuel Sperling.

\* \* \*

1. *Failure to Attend Hearings on October 22, 1999, and September 29, 2000.*

It is the Commission's position that, by failing to attend the October 22, 1999, and September 29, 2000, court hearings, Jonathan violated Rules 1.1 and 1.3 of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"). In pushing its position, the Petitioner acknowledges that "Leonard Sperling, as the owner of the Sperling Law Firm, the name signed on the retainer agreement, and as the attorney whose appearance was entered in the case, was responsible for appearing on behalf of Ms. Brunson–Hill at

all court proceedings." Petitioner adds, however, that "Leonard Sperling's culpability does not absolve any subordinate attorney who may have shared the responsibility for appearing on behalf of Ms. Brunson–Hill."

Unlike many law firms, where cases are routinely assigned to and handled by a specific attorney, at this law firm, Leonard Sperling maintained almost complete control over all of the firm's clients and cases. According to the undisputed, credible testimony, Leonard brought in the clients, met with them, signed the retainer agreements, maintained the files, entered only his appearance in court, signed all of the pleadings, mandated that all notices, pleadings, and correspondence be directed to and reviewed by him personally, and managed the calendar for all court appearances. Except for specific tasks that he delegated to other attorneys, Leonard retained all responsibility and control.

With respect to Ms. Brunson–Hill's case, Jonathan Sperling, who had been practicing law for roughly two months, was assigned the tasks of drafting discovery and insuring that the defendant was properly served. On at least some occasions, Leonard Sperling had Jonathan appear in court. He had other attorneys appear in court as well. Both Samuel Sperling and Andrea Babest worked on Ms. Brunson–Hill's case. Samuel drafted the designation of expert witnesses. Andrea Babest assisted in efforts to find Ms. Frank. Jonathan was never given full responsibility for the file. He was assigned discreet tasks to perform, as were other attorneys in the firm. Any court notices regarding hearings were sent directly to Leonard. Jonathan had only the information and assignments given to him by his father.

The manner in which Leonard Sperling chose to run his law firm is troubling. He kept virtually total control of every aspect of the cases. He does not appear to have developed or utilized any sort of reminder/tickler system or back up plan with respect to court appearances. It was only a matter of time before a court date was missed. The responsibilities for these failings rests with Leonard, not

with Jonathan, who never received prior notice of the court dates and was not assigned by Leonard to attend them.

After considering all of the facts and circumstances presented by way of live testimony and documentary evidence, this Court finds that the Petitioner failed to establish, by clear and convincing evidence, that, by failing to take it upon himself to determine whether there were any upcoming court appearances, and by failing to attend the October 22, 1999, September 29, 2000, hearings, Jonathan violated either Rule 1.1 or Rule 1.3.

### 2. *Communications with Client.*

The Commission alleges that Jonathan Sperling ran afoul of the MLRPC by failing to keep Ms. Brunson–Hill abreast of the status of her case. It is undisputed that Jonathan failed to inform Ms. Brunson–Hill that the case had been dismissed. He also failed to tell her that the statute of limitations had run. It is undisputed that, following a direct inquiry from Ms. Brunson–Hill, Jonathan indicated, via email on February 25, 2008, that the case was "making its rounds with the clerk and she assures me she is working on it." By the time of his email communications, Jonathan knew that the case had been dismissed back in September, 2000. And, even if, somehow, Jonathan's conversation years earlier with the clerk's office led him to conclude that the dismissal would be vacated, he knew, given the passage of significant time, that the matter would not be resolved as he had hoped.

Ms. Brunson–Hill's case lay dormant for an inordinate and unacceptable period of time. Suit was filed on November 30, 1998; it was ultimately dismissed on September 29, 2000. Notwithstanding Jonathan's acknowledgment that he learned of the dismissal and his claim that he was in constant contact with the clerk's office, the motion to reopen was not filed until April 11, 2008. As Jonathan Sperling admitted during his testimony, once he learned of the dismissal, he "totally dropped the ball." In doing so, with respect to his representation of Ms. Brunson–Hill,

Jonathan violated Rule 1.1, Rule 1.3, Rule 1.4, and Rule 8.4 of the MLRPC.

3. *Communications with Dr. Honick's Office.*

The Commission claims that Jonathan made false statements of material fact to Dr. Honick's office regarding the status of Ms. Brunson–Hill's case. The record makes clear that, over a number of years, Dr. Honick's office repeatedly sought this information. It is alleged that Jonathan indicated that the case was pending when he knew it was not.

Initially, the inquiries from Lisa Kirkpatrick, with Dr. Honick's office, were sent to the attention of Leonard Sperling. Subsequent inquiries were sent directly to Jonathan. It appears that Jonathan responded to the December 26, 2001, and November 13, 2002, inquiries. There is no indication that Jonathan Sperling, or anyone else associated with the law firm, responded to Ms. Kirkpatrick's inquiries of June 21, 2005, August 3, 2005, and May 16, 2006.

The Commission did not call Dr. Honick, Lisa Kirkpatrick or anyone else associated with the medical office as a witness. The correspondence, however, was admitted without objection. It is clear from the documentary evidence presented that Dr. Honick's office, over a period of several years, repeatedly sought information regarding the status of Ms. Brunson–Hill's case. It is also clear that several requests were ignored. What is unclear, and what the Commission failed to prove by clear and convincing evidence, is that, at the time Jonathan responded, he knew that the information was false. The Commission has failed to prove that Jonathan violated Rule 4.1.

4. *Candor with the Tribunal.*

On April 11, 2008, Jonathan Sperling provided an affidavit to the Court, in which he affirmed that he was familiar with the case and that all of the statements made in the plaintiff's Motion to Reopen Case were correct to the best of his knowledge and belief. In the motion itself, plaintiff's counsel stated that he had been "in constant contact with the

clerk's office." He also told the Court that someone in the clerk's office had indicated that the matter would be "fixed," and that plaintiff's counsel should not worry. In the motion, plaintiff's counsel also stated that he "has a good idea where the defendant is" and that, if the matter were reopened, "plaintiff's counsel would be able to proceed with due haste." On May 5, 2008, plaintiff's counsel filed a supplemental motion to reopen the case. The motion was accompanied by an affidavit signed by Jonathan Sperling. Jonathan stated that he had "contacted the clerk's office on numerous occasions," and had been told that "the matter would be fixed and re-opened."

At the August 14, 2012 hearing, Jonathan testified regarding his communication with the clerk's office. He indicated that, "early on," once he learned of the dismissal, he contacted the clerk's office and spoke with someone "with an accent." Jonathan further testified that he called the clerk's office on more than one occasion. He indicated that, each time he called, he was told that the error would be rectified. Jonathan was not able, however, to provide any specific information regarding the number of times he called, the dates and times of those calls, or the identities of those with whom he spoke. In fact, Jonathan testified that, during the relevant time period, he did not keep notes of incoming or outgoing telephone calls.

Jonathan's testimony is in direct contrast to that of Loretta Knight, who was the manager of the civil department at the time. While Jonathan Sperling may have called the clerk's office on one occasion, he did not call repeatedly. He most certainly was not in constant contact with the clerk's office during the eight years following dismissal of this case. He was not told repeatedly by the clerk's office that the problem would be fixed. He was not told repeatedly that there was no need to worry. When Jonathan suggested otherwise to the Court, he was not candid. Moreover, the Sperling Law Firm had no more idea where defendant Greta Frank could be located in 2008 than it had in the period of time between 1998 and 2000, when the case

was dismissed. While the firm certainly attempted to locate Ms. Frank in the beginning, virtually no efforts were made to find Ms. Frank after the case was dismissed in September, 2000. Jonathan was not candid with the Court when he stated that he had been working diligently on this case.

Jonathan's assertions to the Court were not merely a poor choice of words. Rather, and unfortunately, they were provided in an attempt to place blame on others and thereby convince the Court to re-open the matter. The Commission proved, by clear and convincing evidence, that Jonathan failed to be candid with the Court and, in doing so, violated Rule 4.1 [12] and Rule 8.4.

### CONCLUSION

The Commission proved, by clear and convincing evidence, that Jonathan Sperling violated Rule 1.1 and Rule 1.3 of the MLRPC when, after learning of the dismissal, he failed to take appropriate action on Ms. Brunson–Hill's behalf. The Commission also met its burden with respect to Rule 1.4, Rule 3.3 and Rule 8.4 of the MLRPC. The Commission failed to prove, by clear and convincing evidence, that Jonathan Sperling violated Rule 1.2 and Rule 4.1.

 " 'This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland.' " *Attorney Grievance v. Seltzer,* 424 Md. 94, 112, 34 A.3d 498, 509 (2011), quoting *Attorney Grievance v. Stern,* 419 Md. 525, 556, 19 A.3d 904, 925 (2011). " 'In our independent review of the record, we accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous.' " *Attorney Grievance v. Chapman,* 430 Md. 238, 273, 60 A.3d 25, 46 (2013), quoting *Attorney Grievance v. Lara,* 418 Md. 355, 364, 14 A.3d 650, 656 (2011). We conduct an independent, de novo

---

**12.** In her findings, the judge erroneously refers to Rule 4.1 as the Rule governing Candor Toward the Tribunal, rather than the proper Rule, Rule 3.3. Bar Counsel has referred to this as a typographical error in his exceptions, and we shall sustain this exception.

review of the hearing judge's conclusions of law, pursuant to Rule 16–759(b)(1).[13]

Jonathan excepts to the hearing judge's conclusions that he violated Rules 1.1, 1.3, and 3.3(a), but does not except to the conclusions that he violated Rules 1.4(a) and (b) or 8.4(a), (c), and (d). Bar Counsel excepts to the hearing judge's conclusion that Jonathan did not violate Rule 1.2(a). Because neither party filed any exceptions to the findings of fact relevant to these charges,[14] we accept those findings as proven by clear and convincing evidence pursuant to Rule 16–759(b)(2)(A).[15] *Attorney Grievance v. Nelson,* 425 Md. 344, 359, 40 A.3d 1039, 1047 (2012).

Jonathan initially excepts to the conclusions that he violated Rules 1.1 and 1.3. Rule 1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

The hearing judge made two separate findings with respect to Rules 1.1 and 1.3; she first concluded that Jonathan did not violate Rules 1.1 and 1.3 by failing to attend the pre-trial hearings on October 22, 1999, and September 29, 2000, because "the responsibilit[y] for [missing these court dates] rests with Leonard, not with Jonathan, who never received prior

---

**13.** Rule 16–759(b) provides in pertinent part:

(b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

**14.** Jonathan excepts to Judge Ensor's finding that he, rather than his father, Leonard, responded to Dr. Honick's inquiries regarding the status of Ms. Brunson–Hill's case in December of 2001 and November of 2002. Judge Ensor did not rely on this finding in reaching her conclusions of law, and neither do we.

**15.** Rule 16–759(b)(2)(A) provides:

(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanction, if any.

notice of the court dates and was not assigned them by Leonard," but did conclude that Jonathan violated both Rules 1.1 and 1.3 when he "dropped the ball" and did not communicate with his client upon learning of the case's dismissal. Jonathan asserts that he did not violate Rules 1.1 and 1.3 because at the time he learned the case was dismissed, the case was beyond resuscitation and "there was no course of action that reasonably could have been pursued."

With regard to "dropp[ing] the ball," however, Jonathan testified at the hearing that his failure to attempt to remedy the dismissal when he learned of it in 2006 or 2007 was a "tremendous error" on his behalf and that he should have done more. Specifically, he testified:

> At that time, I should have filed motions. I should have done more, but I didn't and that's really the ... that's ... a tremendous error.
>
> * * *
>
> Again, where I'm looking in hindsight, I understand how this could be looked at. I should have done—I should have filed a written motion at that point. And I'll agree that I didn't. ... I should have done it. It was a tremendous error on my behalf.

As Jonathan admitted, upon learning that the case had been dismissed, he was required to use his legal knowledge and skill, with the requisite thoroughness and preparation, to attempt to remedy the error.

In *Attorney Grievance v. Mooney*, 359 Md. 56, 753 A.2d 17 (2000), the attorney was charged with violating Rules 1.1 and 1.3, *inter alia*, for his failure to file a reverse waiver in a criminal matter on behalf of a juvenile defendant. He admitted his conduct violated Rule 1.3, but argued that the failure to file the motion did not violate Rule 1.1 because the reverse waiver motion that was filed by a subsequent attorney in the same case was unsuccessful, therefore, "not enough facts exist[ed] to establish whether such a motion, if timely, had a reasonable possibility of success." *Id.* at 84, 753 A.2d at 32. We disagreed and explained that, "[t]he fact that the reverse

waiver petition that was ultimately filed was unsuccessful generally has no bearing on whether respondent's failure, without explanation, to file it constituted incompetence." *Id.* Accordingly, we determined that Mooney violated both Rules 1.1 and 1.3.

■ In this case, Jonathan's assertion that there was no reasonable course of action that could have been pursued in Ms. Brunson–Hill's case upon his learning of the dismissal is belied by his subsequent unilateral filing of two motions to reopen triggered by Ms. Brunson–Hill's request for a case status in 2008. The ultimate denial of these motions has no bearing, however, on whether Jonathan acted competently and diligently in this case. Jonathan, in addition to not filing a motion to reopen immediately, did not research whether there were means to legally circumvent the running of the statute of limitations, investigate whether there was a basis for arguing that the statute of limitations had not tolled, or inform his client of the issue, for instance. Jonathan's ultimate decision to do nothing promptly when he learned the case was dismissed violated Rules 1.1 and 1.3. His initial exception is overruled.

■ Jonathan also excepts to the conclusion that he violated Rule 3.3(a),[16] which provides in pertinent part that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal or lawyer[.]" The hearing judge found that Jonathan violated Rule 3.3(a) when he averred that he "contacted the clerk's office on numerous occasions." Moreover, she determined that Jonathan was not candid when he attested in his verified affidavit to the assertion that "Plaintiff's counsel has a good idea where the defendant is and if the matter were re-opened, Plaintiff's counsel would be able to proceed with due haste in completing this

---

**16.** Jonathan erroneously characterized this exception as one to Rule 4.4. Rule 4.4, however, was never charged. In the context of his exceptions, it is clear he is excepting to the conclusion that he violated Rule 3.3(a).

matter." The hearing judge found that these misrepresentations "were provided in an attempt to place blame on others and thereby convince the Court to re-open the matter." According to Jonathan, however, he did not intend to make a knowing false statement to the court when he averred that he was in constant contact with the clerk's office.

Here, Jonathan's exception fails to account not only for his misrepresentations regarding the clerk's office's response that the matter would be fixed and reopened, and his assertion that he had a good idea where the defendant was and could proceed with due haste, but also that he submitted verified affidavits, with these misrepresentations, in support of the Motion to Re-open Case and again in the Supplemental Motion to Re-open Case. His statements, then, taken as a whole, are sufficient to support the conclusion that he intended to mislead the court by knowingly making false statements of fact. *See Attorney Grievance v. Fader*, 431 Md. 395, 66 A.3d 18 (2013). Jonathan's exception regarding Rule 3.3(a) is overruled.

■ Bar Counsel excepts to the hearing judge's conclusion that Jonathan did not violate Rule 1.2(a), contending that Jonathan's failure to inform Ms. Brunson–Hill that the case had been dismissed and the statute of limitations had run deprived Ms. Brunson–Hill of the ability to make an informed decision as to the objectives of the representation. Rule 1.2(a) provides:

> (a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

In support of his exception, Bar Counsel cites *Attorney Griev-ance v. Reinhardt,* 391 Md. 209, 892 A.2d 533 (2006) and *Attorney Grievance v. Brown,* 426 Md. 298, 44 A.3d 344 (2012). Jonathan argues in response that *Reinhardt* and *Brown* are distinguishable because the violations of Rule 1.2(a) in those proceedings involved cases that were pending, while Ms. Brunson–Hill's case had been dismissed.

In *Reinhardt,* 391 Md. at 220, 222, 892 A.2d at 539–40, the hearing judge concluded, and we agreed, that the attorney violated Rule 1.2(a) "by failing to follow the client's instruction to pursue [her] case and inform her of the status of the case." In *Brown,* 426 Md. at 320, 44 A.3d at 357, the attorney was found to have violated Rule 1.2(a) based upon his neglect and lack of communication in several cases. We noted Brown's conduct with respect to his violation of Rule 1.2(a) "mirror[ed] closely the misconduct in *Reinhardt,*" and explained that two of the clients' "cases were dismissed for lack of prosecution [and] Respondent failed subsequently to inform either client of the dismissals." *Id.* Notably, applicable statutes of limitations had expired on several of the claims, and the clients were left without recourse.

Jonathan's response is based upon the notion that he did not violate Rule 1.2(a), because any alternative or choice that Ms. Brunson–Hill chose or made after the case had been dismissed would not have resulted in a successful outcome. Rule 1.2(a), however, does not require that a client's decision regarding the objectives of the representation necessarily result in a successful outcome. It was Ms. Brunson–Hill's choice that was offended by Jonathan's failure to inform her of the dismissal. Accordingly, Bar Counsel's exception is sustained.

Jonathan does not except to the hearing judge's conclusions that he violated Rules 1.4(a) and (b) and 8.4(a), (c), and (d). We conclude upon a de novo review that Jonathan violated Rules 1.4(a) and (b) and 8.4(a), (c), and (d).

Rule 1.4(a) provides in pertinent part that a lawyer shall "promptly inform the client of any decision or circum-stance to which the client's informed consent . . . is required

by these Rules"; "keep the client reasonably informed about the status of the matter"; and "promptly reply to reasonable requests for information." When an attorney misrepresents the status of a case to a client, that conduct violates Rule 1.4(a). *See Attorney Grievance v. London,* 427 Md. 328, 352, 47 A.3d 986, 1000 (2012); *Attorney Grievance v. Steinberg,* 395 Md. 337, 368–69, 910 A.2d 429, 447–48 (2006). Here, Ms. Brunson–Hill asked Jonathan whether her case was still open, and Jonathan not only concealed from her that the case had been dismissed, but also misrepresented that the case was "making its rounds with the clerk and she assures me she is working on it." Jonathan's conduct violated Rule 1.4(a).

Rule 1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." "A lawyer's failure to inform his or her clients about a pending or granted motion to dismiss violates MLRPC 1.4(b)." *Brown,* 426 Md. at 322, 44 A.3d at 358. Here, Jonathan failed to inform his client that the case had been dismissed and thereby violated Rule 1.4(b).

Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" Here, Jonathan both misrepresented facts to the court in an effort to mislead the court into granting both motions to reopen and lied to his client regarding the status of her case. In so doing, Jonathan violated Rule 8.4(c). *Brown,* 426 Md. at 324, 44 A.3d at 359–60; *Attorney Grievance v. Gordon,* 413 Md. 46, 58, 991 A.2d 51, 58 (2010)

Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Here, Jonathan lacked competence and diligence and lied to his client and the court in an effort to conceal his shortcomings. His dishonesty with his client violates Rule 8.4(d), *Reinhardt,* 391 Md. at 222, 892 A.2d at 540–41, as do his attempts to overtly mislead the court, *Fader,* 431 Md. at 417, 66 A.3d at 31.

█ Rule 8.4(a) provides in pertinent part that it is professional misconduct for a lawyer to "violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct[.]" Jonathan violated Rules 1.1, 1.3, 1.2(a), 3.3(a), 1.4(a) and (b) and 8.4(c) and (d). Jonathan, therefore, violated Rule 8.4(a). *See Attorney Grievance v. Garcia,* 410 Md. 507, 519–20, 979 A.2d 146, 153–54 (2009).

We now turn to the appropriate sanction. Bar Counsel, relying on *Attorney Grievance v. Lane,* 367 Md. 633, 790 A.2d 621 (2002) and *Attorney Grievance v. London,* 427 Md. 328, 47 A.3d 986 (2012), as well as the presence of a pattern of deceit and several other aggravating factors, recommends disbarment. Jonathan, conversely, cites to *Attorney Grievance v. Reinhardt,* 391 Md. 209, 892 A.2d 533 (2006), *Attorney Grievance v. Harrington,* 367 Md. 36, 785 A.2d 1260 (2001), and *Attorney Grievance v. Mooney,* 359 Md. 56, 753 A.2d 17 (2000), to argue that only a 90–day suspension should be meted out.

█ Our intent in imposing sanctions is to protect the public, not to punish the offending attorney. *Attorney Grievance v. Chapman,* 430 Md. 238, 277, 60 A.3d 25, 49 (2013). "We have also noted that '[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed.'" *Attorney Grievance v. Stinson,* 428 Md. 147, 196, 50 A.3d 1222, 1251 (2012), quoting *Attorney Grievance Commission v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). In determining the appropriate sanction, "[w]e evaluate every attorney grievance matter on its own merits, taking into account the facts and circumstances involved." *Attorney Grievance v. Bleecker,* 414 Md. 147, 176, 994 A.2d 928, 945 (2010), citing *Attorney Grievance v. Gisriel,* 409 Md. 331, 385, 974 A.2d 331, 362 (2009). For guidance in imposing sanctions, we often rely on the factors in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of the victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Bleecker*, 414 Md. at 176–77, 994 A.2d at 945–46 (2010).

Factor (b), "dishonest or selfish motive," is present in this case, because Jonathan, according to the hearing judge, lied to the court in an effort "to place blame on others and thereby convince the Court to re-open the matter." Factor (c), "pattern of misconduct" is also present in this case. An attorney engages in a pattern of misconduct by committing numerous actions in furtherance of a singular goal. *Fader*, 431 Md. at 437–38, 66 A.3d at 43. Jonathan submitted two verified affidavits containing misrepresentations on two separate occasions in order to mislead the court into reopening Ms. Brunson–Hill's case and, additionally, lied to his client about the status of her case in an effort to conceal his neglect of Ms. Brunson–Hill's case.

Factor (d), "multiple offenses," is also implicated. An attorney commits multiple offenses when he or she committed multiple violations of the Rules of Professional Conduct. *See Stinson*, 428 Md. at 194, 50 A.3d at 1250. Here, Jonathan violated various Rules stemming from his misrepresentations to the court and his client.

Factor (f), "submission of false evidence, false statements, or other deceptive practices during the disciplinary process," is implicated here also. In this regard, Jonathan testified in the hearing before Judge Ensor that he was assured by

representatives of the Clerk's Office for the Circuit Court for Montgomery County that the matter would be fixed and the case would be reinstated, which was found to be a lie. *See Attorney Grievance v. Dominguez*, 427 Md. 308, 327, 47 A.3d 975, 986 (2012).

Finally, factor (g), "refusal to acknowledge wrongful nature of conduct," is also implicated here. Since the time he made the misrepresentations, Jonathan continuously downplayed the significance of his misrepresentations to the court and his client and the effect of such conduct on the integrity of the legal profession. Although there has been a suggestion before us that Jonathan has been remorseful since committing the violations, there is no finding in mitigation.[17] Although Jonathan conceded that he should have contacted his client upon learning of the dismissal, he has not acknowledged the gravity of his misrepresentations to the court. Even in his exceptions, Jonathan did not appreciate the implications of his conduct. *See Stinson*, 428 Md. at 195, 50 A.3d at 1251.

While the sanction for dishonest conduct is generally disbarment, "[w]e have not, however, always found disbarment to be the appropriate sanction when there is misrepresentation involved, especially when misappropriation of money is not involved." *Lane*, 367 Md. at 646–47, 790 A.2d at 628. In *Lane*, 367 Md. at 647, 790 A.2d at 629, however, we determined that disbarment was the appropriate sanction for an attorney who engaged in a pattern of outlandish misrepresentations "of the most egregious nature," including telling a client that he had obtained an $11 million judgment on her behalf and to bring a suitcase and security to the courthouse to pick up the money, when, in fact, he had obtained nothing on her behalf. In *Attorney Grievance v. London*, 427 Md. 328, 354–55, 47 A.3d 986, 1001–02 (2012), we disbarred London based on his pattern of continual deceit relating to his neglect of a client in several real estate transactions, but London had been disbarred before, which "militate[d] toward disbarring

---

17. We would note, and Bar Counsel concedes, that Jonathan has no disciplinary history.

him again." Jonathan's actions and lack of disciplinary history do not support disbarment based on *Lane* and *London*.

Jonathan's citations to *Mooney, Harrington,* and *Reinhardt,* support the imposition of an indefinite suspension in this case, rather than a 90–day suspension. In *Mooney,* 359 Md. at 97, 753 A.2d at 39, we imposed an indefinite suspension with the right to reapply in 90 days because of representation of clients marred by inattention, failures to appear, failure to properly manage staff, failures to communicate, misrepresentations, and a failure to appropriately prosecute his client's cases. In *Harrington,* 367 Md. at 51–52, 785 A.2d at 1268–69, we imposed an indefinite suspension for representation of three clients involving serious neglect and, in addition, a complete lack of cooperation with Bar Counsel. In *Reinhardt,* 391 Md. 209, 892 A.2d 533, the attorney violated Rules 1.1, 1.2(a), 1.3, 1.4(a) and (b), 3.2(a), and 8.4(c) and (d) after having filed a complaint on behalf of his client, taking minimal actions to prosecute that case, losing the file, and misrepresenting to the client that he was working on the case, when he was not; we imposed an indefinite suspension.

 Neither Bar Counsel's recommendation for disbarment nor Jonathan's recommendation of a 90–day suspension is appropriate in this case. Jonathan's misconduct involved one case and one client, but was marred by his lack of competence, diligence, and lack of candor with his client and the court, certainly grievous actions. We determine that an indefinite suspension is the appropriate sanction in this case.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JONATHAN DANIEL SPERLING.**