*Attorney Grievance Commission of Maryland v. Richard Allen Moore, II*, No. 15, September Term, 2015. Opinion by Greene, J.

**ATTORNEY DISCIPLINE –** Attorney's incompetence, neglect, failure to communicate with his client, failure to properly terminate the representation, and lack of diligence in handling his client's matter warrants a sanction of an indefinite suspension. The attorney's conduct was not so egregious that only disbarment could adequately protect the public. Here, because of the presence of aggravating factors and the attorney's negligent misrepresentation of the facts, we hold that an indefinite suspension with the right to reapply for admission after ninety days is the appropriate sanction.

Circuit Court for Prince George's County
Case No. CAE15-16176
Argued: October 11, 2016

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 15

September Term, 2015

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

RICHARD ALLEN MOORE, II

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Greene, J.

_____

Filed: January 20, 2017

Richard A. Moore, II ("Respondent"), was admitted to the Bar of this Court on June 28, 1990. Beginning in 1990, Respondent served as an Assistant State's Attorney in Prince George's County for approximately nineteen years. Respondent left the State's Attorney Office in 2009 and entered into private practice as a solo-practitioner. Respondent's practice consisted of criminal defense, personal injury matters, and family law matters. On March 18, 2013, Respondent was placed on exempt status[1] based on his appointment as an Administrative Law Judge.

On May 7, 2015, the Attorney Grievance Commission of Maryland ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16-751(a)[2], filed a "Petition For Disciplinary Or Remedial Action" against Respondent. The Petition addresses allegations of misconduct from Respondent's representation of Cynthia Covington. Petitioner asserts that based upon clear and convincing evidence, Respondent violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC" or "Rule") 1.1 (Competence), 1.2 (Scope of Representation), 1.3 (Diligence), 1.4 (Communication), 1.16 (Declining or Terminating Representation), 8.1 (Bar Admission and Disciplinary Matters), and 8.4 (Misconduct). This Court referred the matter to the Honorable John P. Davey of the Circuit Court for

---

[1] Pursuant to former Md. Rule 16-811 (now codified as Md. Rule 19-604(a)(4)) the Client Protection Fund is authorized to adopt regulations for administration of the Fund. Regulation (i)(12)(i) provides that lawyers "performing judicial or quasi-judicial functions on a full time basis and who are prohibited from private practice[,]" including Administrative Law Judges, "are exempt from payment of the mandatory assessment."

[2] On July 1, 2016, the Rules governing Attorneys were retitled in Title 19 of the Maryland Rules. At the time of the misconduct and relevant proceedings in this case, the Rules governing Attorneys were codified in Title 16 of the Maryland Rules. This opinion will therefore cite to the Rules as codified at the time of the pertinent events in this matter.

Prince George's County for a hearing to issue findings of fact and conclusions of law pursuant to Md. Rule 16-757.

The hearing judge conducted an evidentiary hearing on April 15, 2016. Thereafter, the hearing judge issued Findings of Fact and Conclusions of Law, maintaining that the evidence was clear and convincing, that Respondent violated MLRPC 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.16 (a) and (d), 8.1(a) and (b), and 8.4(a), (c), and (d). Respondent filed exceptions to the hearing judge's findings of fact and conclusion of law. We conclude that the hearing judge's conclusions as to violations of Rules 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.16(a), and 8.4(a) and (d) were supported by clear and convincing evidence and overrule Respondent's exceptions. We hold, however, that the record lacks clear and convincing evidence to sustain Respondent's violations of Rules 8.1(a) and (b) and 8.4(c).

## FINDINGS OF FACT

The hearing judge conducted an evidentiary hearing on April 15, 2016, after which he made the following factual findings:

> On or about May 9, 2012, Ms. Covington was involved in a four car automobile accident. The fourth driver was insured by GEICO and accepted liability. In August 2012, Ms. Covington retained the Respondent to represent her pursuant to a Contingency Fee Retainer Agreement that was signed by Ms. Covington on August 25, 2012. Ms. Covington was referred to the Respondent by a close friend who recommended that she contact Respondent for representation.
>
> It is undisputed that Ms. Covington received medical treatment at least through the month of August 2012. Based on advice from her doctor, Ms. Covington understood that she should not consider a settlement no [sic] sooner than 4 months after she completed her medical treatment.
>
> On September 2, 2012, Ms. Covington advised the Respondent that a GEICO representative would like to speak with him about the claim, and Ms. Covington provided the name and contact information to the Respondent and authorized Respondent to settle her claim. On or about September 6, 2012,

2

the Respondent stated, "After I speak with the GEICO representative, I will give you a call to discuss what she says." The Respondent did not speak with the GEICO representative or follow-up with Ms. Covington. On October 2, 2012, Ms. Covington emailed the Respondent and stated that she had received a call from the GEICO representative who advised her that she had been unable to contact the Respondent. Ms. Covington provided the Respondent with the contact information for the representative again and requested he contact GEICO "as soon as possible." On October 3, 2012, the Respondent replied that he would "look into it and take care of it." Also on October 3, 2012, GEICO wrote to the Respondent and asked him to send a letter of representation. The Respondent received the letter from GEICO[,] however, he did not make any effort to contact them or send a letter of representation.

On October 31, 2012, having heard nothing from the Respondent, Ms. Covington emailed the Respondent and stated, "Checking in to see where we stand with the GEICO settlement. Thank you so much." The Respondent did not respond to Ms. Covington's email in any manner. On December 1, 2012, having heard nothing from the Respondent, Ms. Covington emailed him and stated, "Please let me know a convenient time to speak with you regarding my auto accident." The Respondent did not respond to Ms. Covington's email in any manner. On December 17, 2012, having heard nothing from the Respondent, Ms. Covington sent him another email stating, "I've sent you emails and left a message for you and I have not heard anything from you. Please advise me as to the status of my case." The Respondent did not respond to Ms. Covington's email in any manner. On January 13, 2013, having not received any response from the Respondent, Ms. Covington emailed him again and stated, "Please proceed in settling my claim with GEICO."

On January 14, 2013, Ms. Covington spoke with the Respondent during a brief phone call that lasted approximately 3 minutes. During the phone call, Ms. Covington restated that she wanted to settle her claim and authorized the Respondent to make a demand.

On February 19, 2013, the Respondent for the first time, sent a letter of representation to GEICO, stating, *inter alia*, "As of this date, my client has completed all treatment. Upon my receipt of my client's medical records, bills and reports, I will forward copies to you for your review along with an offer for settlement." The Respondent, despite being in possession of an Authorization to Release Medical Information signed by Ms. Covington, did not request any of Ms. Covington's medical records from the providers and did nothing to further settlement of Ms. Covington's claim.

After multiple interviews, in February 2013, the Respondent was notified that he would be appointed as an Administrative Law Judge. He was given four weeks to close his practice. Based upon discussions with W.

3

Thomas Stovall, II, Esq., Respondent decided to inform all of his clients that he could provide a referral to another attorney for representation for any work remaining in their cases or they could retain new counsel of their own choosing. Respondent began his employment as an Administrative Law Judge on March 12, 2013, and on March 18, 2013, he was placed on exempt status by the Attorney/Client Trust Fund of the Bar of Maryland.

On April 10, 2013, Ms. Covington, having heard nothing from the Respondent, emailed him and stated, "Just checking in. How's the settlement process going?" The Respondent did not respond. On April 17, 2013, Ms. Covington sent an email to [the Respondent] advising that USAA, her carrier had agreed to accept a property damage settlement from GEICO. She further stated, "Where do we stand? How soon can we settle?" The Respondent did not respond. On April 30, 2013, having heard nothing from the Respondent, Ms. Covington emailed him and stated, "Just checking on the progress of the settlement. When do you expect to be able to close out?" The Respondent did not respond in any manner. On May 21, 2013, Ms. Covington emailed the Respondent and stated, "Please let me know where we stand on my settlement with GEICO. I have supplied you with all of the pertinent information requested. I would greatly appreciate a response to my email." The Respondent did not respond in any manner.

On or about May 31, 2013, Ms. Covington called the Respondent's virtual office[3] and left a voicemail message asking that Respondent return her phone call. [Respondent] had terminated all services with his virtual office and receptionist when he started as an Administrative Law Judge. Respondent asserts his virtual office and receptionist terminated at least 1 ½ months prior to Ms. Covington's telephone call; therefore, it is unclear as to when the message referred to was actually left. On May 31, 2013, the Respondent returned Ms. Covington's phone call and the two spoke for the first time since January 2013. The conversation lasted approximately 3 minutes. The Respondent advised Ms. Covington, for the first time, that he had accepted a position as an Administrative Law Judge. He told Ms. Covington that he would be closing his practice and that he was referring her case to another attorney, but he could not provide a name as the other attorney had not yet agreed to take her case. The Respondent assured Ms. Covington that the new attorney would be in touch with her within one week.

Ms. Covington never received any communication from the unnamed attorney that was to take over her case. Ms. Covington called the Respondent's cellular phone and left voice messages on July 1, 2013, July 15, 2013, July 29, 2013, August 7, 2013, August 9, 2013, August 12, 2013,

---

[3] Respondent worked from home but maintained a virtual office space in Largo, Maryland. Respondent would meet with his clients at the virtual office space and had access to phones and answering services there.

August 14, 2013, and September 27, 2013. The Respondent did not return Ms. Covington's calls or respond to her voicemail messages in any manner.

On September 27, 2013, Ms. Covington emailed the Respondent and stated:

> Mr. Moore,
> When we last spoke at the end of May 2013, you advised me that you were closing your practice and that my case would be transferred to another personal injury attorney within 1 week. As of today, I have not received any correspondence from you or any other attorney. I have left you several voice mail messages that you have not responded to. At this point, I want to terminate our agreement as you have failed to represent me in this matter. Please contact me immediately to discuss and execute a termination of our agreement.
>
> Sincerely,
> Cynthia Covington

The Respondent failed to respond to Ms. Covington's September 27, 2013 email in any manner. On September 30, 2013, Ms. Covington called the Respondent's cellular phone and left a final voicemail message. The Respondent did not respond to Ms. Covington's voicemail message in any manner. The Respondent did not write to GEICO and advise them [sic] that he was no longer representing Ms. Covington, he did not provide Ms. Covington with a copy of her file and did not execute a termination of representation as requested. In 2015, the Respondent eventually provided a lien release to Ms. Covington.

On February 25, 2014, Ms. Covington filed a complaint with Bar Counsel. On March 19, 2104, Bar Counsel forwarded the complaint to the Respondent and requested a response within fifteen days. On April 15, 2014, with no response having been received, Bar Counsel wrote to the Respondent and requested a response. On April 21, 2014, the Respondent called Bar Counsel and received an extension through May 12, 2014. On May 12, 2014, the Respondent provided a written response to Bar Counsel stating in part, "Right around that time, Ms. Covington and I had a conversation about her case. When I reported to her that I had a new attorney lined up, Ms. Covington left me with the impression that she wanted to secure the services of her own attorney to take over the case."

By letter dated June 2, 2014, Bar Counsel requested the Respondent provide, *inter alia*, a complete copy of Ms. Covington's file, the date he closed his practice, the name of the attorney that was to take over Ms. Covington's matter and a complete description of all actions taken following September 27, 2013 to comply with Rule 1.16(d) of the Maryland Lawyer's

5

Rules of Professional Conduct. The information and documentation was to be provided no later than June 20, 2014. The Respondent retained Counsel, and on July 1, 2014 provided his written response, which failed to address the attorney that was to take over Ms. Covington's matter. On July 10, 2014, the Respondent delivered a copy of Ms. Covington's file to Bar Counsel.

On July 25, 2014, Bar Counsel again requested the name of the attorney that the Respondent had "lined up" to take over Ms. Covington's matter. The information was to be provided by August 8, 2014. The Respondent did not respond, and on August 12, 2014, Bar Counsel again requested the name of the attorney. By email later that day, the Respondent, through counsel, provided the name of Allan W. Steinhorn, Esq., as the attorney with whom he spoke about taking over his practice.

The undisputed evidence presented at trial is that Ms. Covington called the Respondent nine times between July 1, 2013 and September 30, 2013. Furthermore, the undisputed evidence is that on each of the nine occasions, Ms. Covington left a voicemail message for Respondent. The Court rejects the Respondent's explanation and finds that Respondent knowingly, and intentionally misrepresented to Bar Counsel that he had not heard from Ms. Covington and that he was "waiting" for Ms. Covington to contact him. During a deposition on November 25, 2015, Respondent testified that he told Ms. Covington that he accepted a position as an Administrative Law Judge "right around late February or early March." The Court found that the Respondent [sic] testimony was knowingly and intentionally false.

## CONCLUSIONS OF LAW

Based on evidence presented at the evidentiary hearing, the hearing judge made the following conclusions of law:

### *Maryland Rules of Professional Conduct 1.1 - Competence*

***A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.***

This [c]ourt finds the Respondent in violation of Rule 1.1 for the reasons stated in the discussions of violations of Rules 1.2, 1.3, and 1.4.

### *Maryland Rules of Professional Conduct 1.2 - Rule 1.2 Scope of Representation and Allocation of Authority Between Client and Lawyer*

***Rule 1.2(a) provides:***

6

*Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.*

In September 2012, approximately one month after retaining the Respondent, Ms. Covington authorized the Respondent to make a settlement demand on GEICO. Ms. Covington repeated that directive in January 2013 and March 2013. The undisputed evidence is clear that the Respondent did not send a letter of representation to GEICO until February 2013 and, at no time did he make any settlement demand. Accordingly, this [c]ourt finds the Respondent violated Rule 1.2(a).

## *Maryland Rules of Professional Conduct 1.3 - Diligence*

*A lawyer shall act with reasonable diligence and promptness in representing a client.*

The Respondent did virtually no work on Ms. Covington's matter. The Respondent, as discussed in reference to Rule 1.2, failed to follow Ms. Covington's directive as to settlement. The Respondent, as discussed in reference to Rule 1.4, failed to adequately communicate with Ms. Covington. The Respondent failed to timely send a letter of representation to GEICO, failed to request any relevant evidence from third parties to support Ms. Covington's claim, and failed to make any settlement demand. Accordingly, this [c]ourt finds the Respondent violated Rule 1.3.

## *Maryland Rules of Professional Conduct 1.4 - Communication*

*(a) A lawyer shall:*
*(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;*
*(2) keep the client reasonably informed about the status of the matter;*
*(3) promptly comply with reasonable requests for information; and*
*(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance*

7

*not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.*
*(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.*

The Respondent failed to respond to many of Ms. Covington's phone calls and emails. On those instances that the Respondent did response [sic], the responses were inadequate in that they failed to keep Ms. Covington reasonably informed about the status of her matter, failed to answer her questions and failed to comply with Ms. Covington's reasonable requests for information. Accordingly, the Court finds that the Respondent violated Rule 1.4(a).

The Respondent failed to explain to Ms. Covington her options upon his termination of the representation. The Respondent failed to advise Ms. Covington that she was entitled to the return of her file (and termination of the agreement) if she so chose. The Respondent failed to advise Ms. Covington of the name of the attorney that he had purportedly made arrangements with to take over the representation to allow Ms. Covington to make an informed decision as to whether or not she wanted to retain the new attorney or whether she wanted to seek alternate counsel. Accordingly, this Court also finds Respondent violated Rule 1.4(b).

### *Maryland Rules of Professional Conduct 1.16 - Declining or Terminating Representation*

*Rule 1.16(a) provides:*
*(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:*
> *(1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;*
> *(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or*
> *(3) the lawyer is discharged.*

*Rule 1.16(d) provides:*
*(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been*

*earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.*

The Respondent failed to timely advise Ms. Covington that the representation was terminated. The Respondent knew in February 2013 that he would be closing his office in March. On March 12, 2013, the Respondent began employment as an Administrative Law Judge and was prohibited from practicing law. Had the Respondent continued to practice law following his appointment, he would have violated Rule 5.5(a) of the Maryland Lawyers' Rules of Professional Conduct. Between March 12, 2013 and May 31, 2013 the Respondent failed to advise Ms. Covington that the representation was terminated and withdraw from her matter. Accordingly, this [c]ourt finds the Respondent violated Rule 1.16(a).

The Respondent failed to give Ms. Covington timely notice of the termination of the representation, failed to advise her that she could employ her own counsel, failed to return her file and failed to advise GEICO that he was withdrawing his appearance. Accordingly, this [c]ourt finds the Respondent violated Rule 1.16(d).

### *Maryland Rules of Professional Conduct 8.1 - Bar Admission and Disciplinary Matters*

*An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:*
*(a) knowingly make a false statement of material fact; or*
*(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.*

The Respondent violated Rule 8.1(a) when he knowingly and intentionally misrepresented to Bar Counsel, in his letter of May 12, 2014, that he informed Ms. Covington that he was closing his practice "upon his appointment" as an Administrative Law Judge, that an unnamed attorney had agreed to take over Ms. Covington's case and that Ms. Covington had impressed upon him that she would make her own arrangements for successor counsel. On August 12, 2014, the Respondent knowingly and intentionally misrepresented to Bar Counsel, through counsel, that he was waiting for Ms. Covington to contact him and that he "heard nothing from her." Accordingly, this [c]ourt finds the Respondent violated Rule 8.1(a).

9

The Respondent failed to timely comply with Bar Counsel's lawful demands for information made on March 19, 2014, June 2, 2014, and July 25, 2014. Accordingly, this [c]ourt finds the Respondent violated Rule 8.1(b).

***Maryland Rules of Professional Conduct 8.4 - Misconduct***
***It is professional misconduct for a lawyer to:***
***(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;***

***(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;***
***(d) engage in conduct that is prejudicial to the administration of justice***;

This [c]ourt, as discussed herein, having concluded that Respondent violated multiple Rules, concludes that Respondent has also committed misconduct in violation of Rule 8.4(a).

The [c]ourt finds that each violation of Rule 8.1(a) constitutes a violation of Rule 8.4(c). The Respondent's conduct, taken as a whole, most certainly brings the legal profession into disrepute in violation of Rule 8.4(d).

(internal citations omitted).

Respondent concedes that he violated Rules 1.4, 1.16, and 8.4(a) but has filed exceptions as to the hearing judge's conclusions regarding Rules 1.1, 1.2, 1.3, 8.1 and 8.4(c). Respondent makes no formal exception to the finding that he violated Rule 8.4(d).

## DISCUSSION
### Standard of Review

In attorney discipline proceedings, "this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 152, 879 A.2d 58, 76 (2005). In *Attorney Grievance Comm'n v. Blair*, we articulated the appropriate standard of review in attorney disciplinary matters: "we accept the hearing judge's findings of fact unless shown to be clearly erroneous . . . .

We conduct a de novo review of the hearing judge's conclusions of law." 440 Md. 387, 400–01, 102 A.3d 786, 793 (2014) (citations omitted). It is Petitioner's burden to prove averments in the petition by clear and convincing evidence. Md. Rule 16-757(b).[4] When a Respondent asserts an affirmative defense or a matter of mitigation, it is the Respondent's burden to prove the defense or matter by a preponderance of the evidence. *Id.*

### Exceptions to Findings of Fact

Respondent raises several exceptions to the hearing judge's factual findings. First, Respondent challenges the hearing judge's omission of the fact that Ms. Covington forwarded an e-mail to Respondent on March 4, 2013 containing a complete list of her medical providers and other documents related to her personal injury claim. Respondent contends that this undisputed fact was presented by Bar Counsel in its case-in-chief, and that this fact is relevant to this Court's consideration of alleged violations of Rules 1.1, 1.2, and 1.3. Bar Counsel disagrees with Respondent's characterization of March 4, 2013 as the date which Respondent first received information regarding Ms. Covington's medical providers and points that there is evidence Ms. Covington forwarded her medical bills to Respondent on September 2, 2012 and provided duplicates and updated records on March 4, 2013. Bar Counsel thus contends that the omission was not clearly erroneous. We conclude that the omission of the fact that Respondent received a second transmittal of Ms. Covington's medical documents was not clearly erroneous. Respondent had in his possession most of the relevant documents as early as September 2012 and could have

---

[4] Current Rule 19-727(c).

11

begun work on Ms. Covington's matter. Respondent never requested any evidence from any third parties despite having an authorization for the release of Ms. Covington's medical records. Furthermore, for reasons discussed below, this omitted fact has no bearing on this Court's consideration of violations of Rules 1.1, 1.2, and 1.3. *See Attorney Grievance Comm'n v. Sheinbein*, 372 Md. 224, 241, 812 A.2d 981, 990–91 (2002) (hearing judge's omission of a factual finding was not clearly erroneous where the fact has "little bearing on the outcome of [the] proceeding" and is irrelevant). Accordingly, we overrule Respondent's exception.

Second, Respondent excepts to the hearing judge's omission of the undisputed facts that during Ms. Covington's initial meeting with Respondent on August 25, 2012, Respondent discussed personal injury claims generally with Ms. Covington as well as how Respondent specifically intended to handle Ms. Covington's case and that the retainer agreement signed by Ms. Covington contained language informing Ms. Covington that the personal injury claim process could involve "an extended period of time" where no communication between her and Respondent would occur. We hold that omission of this fact was not clearly erroneous. Respondent's misconduct stems from his neglect of Ms. Covington's case, his failure to respond to her reasonable requests for information, and his failure to do virtually any work on her behalf. It is of no moment that Ms. Covington was informed that she may not hear from Respondent for an extended period of time because the Rules still impose duties of communication and diligence (Rules 1.4 and 1.3), which, as we discuss below, Respondent violated. *See Sheinbein*, 372 Md. at 241, 812 A.2d at 990–91 (hearing judge's omission of a factual finding was not clearly erroneous where the

12

fact has "little bearing on the outcome of [the] proceeding" and is irrelevant). Therefore, we overrule Respondent's second exception.

Third, Respondent filed an exception to the hearing judge's finding that Respondent knowingly and intentionally provided false information to Bar Counsel. The hearing judge found that Respondent "knowingly and intentionally misrepresented to Bar Counsel that he had not heard from Ms. Covington and that he was 'waiting' for Ms. Covington to contact him." In making this first factual finding, the hearing judge seemed to rely on the "undisputed evidence presented at trial . . . that Ms. Covington called the Respondent nine time between July 1, 2013 and September 30, 2013." Assuming, as we do, that such calls were in fact made, evidence of the existence of the calls is not clear and convincing evidence of a knowing misrepresentation to Bar Counsel. The calls from Ms. Covington took place between June to September 2013, and Respondent made the representation at issue through his attorney to Bar Counsel in August 2014, approximately one year later. Evidence that the calls *were made* is not clear and convincing evidence that Respondent remembered the calls at the time his attorney wrote to Bar Counsel, almost one year later. There is no evidence that Respondent ever spoke to Ms. Covington by phone between July 1, 2013 and September 30, 2013. Additionally, there is no evidence that Respondent acknowledged receipt of these calls. In other words, there is no evidence of Respondent's prior or present (at the time counsel wrote to Bar Counsel) knowledge of the fact that Respondent had indeed heard from Ms. Covington. The hearing judge failed to support his finding with any analysis or evidence in the record—direct or circumstantial—to show that Respondent *knowingly* misrepresented to Bar Counsel that he had not heard from Ms.

13

Covington. Accordingly, we sustain Respondent's exception to the hearing judge's factual finding that Respondent knowingly and intentionally misrepresented the facts to Bar Counsel.

The hearing judge also found that Respondent's deposition testimony that he told Ms. Covington of his appointment as an Administrative Law Judge around "late February or early March" was "knowingly and intentionally false." Respondent explains that in his deposition testimony, he testified that *he believes* he told Ms. Covington that he accepted a position as an Administrative Law Judge "right around late February or early March." Respondent posits that his mistaken belief and failed memory cannot be equated to a knowing and intentional representation. Bar Counsel argues that Respondent is merely restating his testimony, which the hearing judge considered and rejected, and that Respondent fails to explain why this finding was clearly erroneous. We agree with Respondent and hold that the record lacks clear and convincing evidence that Respondent knowingly and intentionally misrepresented the facts.

The hearing judge failed to articulate the basis from which he believed that Respondent's deposition testimony was a knowing and intentional misrepresentation. Respondent testified at his deposition that to his *recollection*, he had the conversation terminating his representation of Ms. Covington sometime in late February or early March. Ms. Covington testified at her deposition that the conversation did not occur until late May, and there is undisputed telephone record evidence showing that Ms. Covington called Respondent at the end of May, and that she continued to call him several times between then and September 2013. If the hearing judge reached his conclusion based upon his

14

determination that Ms. Covington was the more credible witness, he did not specifically articulate so. Even if the hearing judge specifically concluded that Ms. Covington was the more credible witness and that the conversation took place in May, such evidence only pertains to a finding of *when* the conversation took place and not whether Respondent *knowingly misrepresented the facts*. The evidence may be clear and convincing to prove that Respondent made a misrepresentation as to the time that the conversation took place, however, the record lacks clear and convincing evidence that Respondent made such representation *with present knowledge of its falsity* because Respondent testified that it was his *recollection* that the conversation had taken place at an earlier time. *See Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 78, 753 A.2d 17, 29 (2000) ("[I]n order to establish its case against respondent, Bar Counsel is required to prove with clear and convincing evidence that respondent's supposed false statements were made with the knowledge that such statements were false when he made them."). The hearing judge's factual finding that Respondent knowingly and intentionally misrepresented the facts is conclusory and is not supported by the evidence. Such conclusory reasoning does not satisfy the clear and convincing evidentiary standard. Accordingly, we sustain Respondent's exception to the hearing judge's factual finding that Respondent knowingly and intentionally made a misrepresentation in his deposition testimony.

Fourth and finally, Respondent challenges the hearing judge's omission of the fact that Ms. Covington was able to successfully settle her claim with the assistance of her new attorney. Bar Counsel argues this was not clearly erroneous because this fact has no bearing upon the issue of whether Respondent violated the rules. We agree with Bar

15

Counsel that lack of prejudice to a client's case may not be relevant to the issue of whether Respondent violated the MLRPC, however, we note, as discussed in further detail below, that this fact is relevant to the issues of sanctions. Because this fact was undisputed and established by clear and convincing evidence and because it bears relevance to the issue of sanctions, we hold that the hearing judge was clearly erroneous in his omission of this fact. We accordingly sustain Respondent's fourth exception to the findings of fact.

## Exceptions to Conclusions of Law
### Rule 1.1 – Competence

Respondent argues that a lack of diligence does not in and of itself constitute incompetence. "Rule 1.1 requires an attorney to provide competent representation to his/her client by applying the appropriate knowledge, skill, thoroughness, and preparation to the client's issues." *Blair*, 440 Md. at 401, 102 A.3d at 793–94 (quoting *Attorney Grievance Comm'n v. Shakir*, 427 Md. 197, 205, 46 A.3d 1162, 1167 (2012)). We have previously recognized that "a complete failure of representation is the ultimate incompetency." *Mooney*, 359 Md. at 74, 753 A.2d at 26. In *Attorney Grievance Comm'n v. Guida*, we elucidated that attorneys can violate Rule 1.1 even though they possess adequate knowledge and skill to represent a client where there is evidence of a lack of thoroughness or preparation. 391 Md. 33, 54, 891 A.2d 1085, 1097 (2006). In *Guida*, we held that an experienced attorney who practiced law for over 30 years violated Rule 1.1 in a simple adoption proceeding where he never filed an action on behalf of his clients. *Id. See also Attorney Grievance Comm'n v. Kwarteng*, 411 Md. 652, 658, 984 A.2d 865, 868 (2009).

16

Here, Respondent failed to request medical records from Ms. Covington's providers notwithstanding having authorization, failed to timely send a letter of representation to GEICO despite Ms. Covington's many requests, and failed to ever make any settlement demand. In the hearing judge's words, "Respondent did virtually no work on Ms. Covington's matter." It is established law that a complete lack of representation is incompetent representation. *See, e.g.*, *Mooney*, 359 Md. at 74, 753 A.2d at 26. Accordingly, the record contains clear and convincing evidence to support the hearing judge's conclusion that Respondent violated Rule 1.1 and we thus overrule Respondent's exception.

### Rule 1.2(a) – Scope of Representation

Respondent next excepts to the hearing judge's conclusion that Respondent violated Rule 1.2(a). We have articulated a lawyer's duty under Rule 1.2:

> In order for a lawyer to abide by a client's decisions concerning the objectives of the representation, the client must be able to make informed decisions as to the objectives of the representation. In order for a client to make informed decisions as to the objectives of the representation, an attorney must give the client honest updates regarding the status of his or her case.

*Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 380, 108 A.3d 394, 402 (2015). In *Attorney Grievance Comm'n v. Reinhardt*, we held that a lawyer violated Rule 1.2(a) by failing to follow the client's directives to pursue the case and inform her of the status of the case. 391 Md. 209, 220, 892 A.2d 533, 538 (2006). In *Reinhardt*, the attorney lost his client's file, failed to inform the client of this loss, and performed no work on the case

17

despite the client's numerous requests regarding the case's status and ultimate resolution. *Reinhardt*, 391 Md. at 218, 892 A.2d at 537.

Similarly, in the case *sub judice*, Respondent did not keep Ms. Covington aware of the status of her case. Respondent made no attempts to settle Ms. Covington's claim despite her instructions to do so. Moreover, Respondent did not timely comply with Ms. Covington's directive to contact GEICO. Respondent argues that he did not attempt to settle the claim because he did not receive a *full* list of Ms. Covington's medical providers and documentation until just nine days before he began his employment as an Administrative Law Judge. However, the record reveals that Ms. Covington sent Respondent at least some medical documentation as early as September 2012. Additionally, Respondent had authorization from Ms. Covington to request her medical records and failed to do so. We thus conclude that the record contains clear and convincing evidence to support the conclusion that Respondent violated Rule 1.2(a) and accordingly overrule Respondent's exception.

### Rule 1.3 – Diligence

"Similar to Rule 1.1, an attorney violates Rule 1.3 when he or she does 'nothing whatsoever to advance the client's cause or endeavor.'" *Blair*, 440 Md. at 402, 102 A.3d at 794 (quoting *Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 554, 16 A.3d 181, 193 (2011)). In *Attorney Grievance Comm'n v. Zdravkovich,* we concluded that a lawyer violated Rule 1.3 when he repeatedly failed to return phone calls, respond to letters, or provide an accounting for earned fees. 362 Md. 1, 762 A.2d 950 (2000). In finding a Rule 1.3 violation, we stated, "this Court has consistently regarded neglect and inattentiveness

to a client's interests to be [an ethical violation] warranting the imposition of some disciplinary sanction." *Zdravkovich,* 362 Md. at 26, 762 A.2d at 963 (quoting *Mooney,* 359 Md. at 76, 753 A.2d at 27). Here, as the hearing judge found, "Respondent did virtually no work on Ms. Covington's matter." Respondent failed to answer Ms. Covington's many calls, messages, and emails. Respondent failed to make any settlement demand. Further, Respondent failed to act diligently and request Ms. Covington's medical information despite having authorization to do so, and failed to timely contact GEICO. Respondent's conduct represents a pattern of neglect and lack of diligence. We conclude there is clear and convincing evidence that Respondent violated this Rule and overrule his exception.

### Rule 1.4 – Communication

Respondent concedes that he violated Rule 1.4 in conjunction with his representation of Ms. Covington. "Rule 1.4(a) requires an attorney to keep a client reasonably informed about the status of his or her case. *Attorney Grievance Comm'n v. Gelb,* 440 Md. 312, 321, 102 A.3d 344, 349–50 (2014) (attorney violated 1.4(a) by failing to return a client's telephone calls or respond to another client's requests for information)." *Attorney Grievance Comm'n v. Barton,* 442 Md. 91, 130, 110 A.3d 668, 691 (2015). Respondent failed to respond to many of Ms. Covington's calls and emails and the responses he did make were inadequate insofar that they failed to keep Ms. Covington reasonably informed about the status of her matter. Respondent failed to answer Ms. Covington's questions or respond to her reasonable requests for information. We hold, therefore, that there is clear and convincing evidence to support the conclusion that Respondent violated Rule 1.4(a).

19

"Rule 1.4(b) requires that an attorney explain matters to the extent necessary to allow the client to make informed decisions." *Id*. Respondent failed to provide Ms. Covington with the name of the attorney who he purportedly arranged to take over her case so that Ms. Covington could make an informed decision as to whether she would retain the new lawyer or seek alternative counsel. We therefore hold that there was clear and convincing evidence to support the hearing judge's conclusion that Respondent violated Rule 1.4(b).

### Rule 1.16 – Termination of Representation

Respondent concedes that he violated Rule 1.16 in connection with his representation of Ms. Covington. Rule 1.16 requires an attorney to terminate representation when such representation is illegal or would violate the Rules. MLRPC 1.16. Respondent failed to timely advise Ms. Covington that the representation was terminated—he knew in February 2013 that he would be closing his practice and began his employment as an Administrative Law Judge in March. Had Respondent continued the practice of law, he would have been in violation of Rule 5.5(a). Nonetheless, Respondent failed to advise Ms. Covington of the termination between March 12, 2013 and May 31, 2013. Such evidence is clear and convincing and supports the conclusion that Respondent violated 1.16(a).

After representation has been terminated or otherwise concluded, a lawyer still owes a duty to his or her client. "When a client requests his or her file from an attorney at the end of the representation, MLRPC 1.16(d) requires the attorney to surrender the portions of the file (or a copy) to which the client is entitled." *Attorney Grievance Comm'n v.*

20

*Brown*, 426 Md. 298, 322, 44 A.3d 344, 359 (2012). Here, as the hearing judge stated, "Respondent failed to advise Ms. Covington of the termination or that she could retain her own counsel, failed to notify GEICO that he was withdrawing from the case, and failed to return Ms. Covington's file." We find clear and convincing evidence to support the hearing judge's conclusion that Respondent violated Rule 1.16(d).

Rule 8.1 – Bar Admission and Disciplinary Matters

Respondent challenges the hearing judge's conclusion that Respondent made a knowing misrepresentation to Bar Counsel in violation of Rule 8.1(a). This Court has explained that

> a finding of deceit and misrepresentation in a disciplinary action must be found to be intentional, supported by clear of convincing evidence . . . . Thus, in order to establish its case against respondent, Bar Counsel is required to prove with clear and convincing evidence that respondent's supposed false statements were made with the knowledge that such statements were false when he made them.

*Mooney*, 359 Md. at 78, 753 A.2d at 29. In *Mooney*, we held that there was a lack of clear and convincing evidence that an attorney violated Rule 8.1(a) when he represented to Bar Counsel that he believed he had assigned a case to his associate when in fact the associate had not been assigned the case. *Mooney*, 359 Md. at 79–81, 753 A.2d at 29–30. Mooney explained to Bar Counsel that he assumed the associate would handle the case because it was a Prince George's County case and that the particular associate usually handled cases in that county. *Id.* However, Mooney also acknowledged that he had no specific knowledge that the associate handled the case. *Id.* We held that "[t]he evidence presented by Bar Counsel [wa]s not so clear and convincing to lead one to conclude that respondent

21

*intended* to mislead the bar investigator" and accordingly granted Mooney's exception to the hearing judge's finding that Mooney violated Rule 8.1(a). *Mooney*, 359 Md. at 80–81, 753 A.2d at 30 (emphasis added).

In *Attorney Grievance Comm'n v. Lee* we distinguished equivocal statements like the statement made in *Mooney* from unequivocal, "emphatic statements of fact." 393 Md. 385, 411, 903 A.2d 360, 374 (2006):

> In contrast to the equivocal statement made by the respondent to the Bar investigator in *Mooney*, the respondent *in Attorney Grievance Commission v. Kapoor*, 391 Md. 505, 894 A.2d 502 (2006), made an unequivocal statement of fact to Bar Counsel, which was proven at the evidentiary hearing to be false. In *Kapoor*, we adopted the hearing judge's conclusion of law that a respondent violated MRPC 8.1(a) where the respondent communicated to the Commission during a disciplinary investigation that his client never tendered a $50 check. The statement constituted a material fact and the attorney was aware of the falsity of the statement because he had accepted the tendered check and deposited it into his personal account.

393 Md. at 410, 903 A.2d at 375 (some internal citations omitted). In *Lee*, an attorney was alleged to have violated Rule 8.1(a) by misrepresenting in a letter to Bar Counsel that the reason for his delay in a case was the unavailability of transcripts that were in fact in his possession. 393 Md. at 409, 903 A.2d at 375. Lee asserted that he did not intend to mislead Bar Counsel in making such a statement but that "the letter expressed his best recollection at the time he wrote the letter." *Id.* We held that Lee violated Rule 8.1(a) when he "intentionally misled the investigator by implying through *emphatic statements of fact*, that the reasons for the case's delay was [sic] due to unavailable transcripts" when Lee had in fact *acknowledged* the receipt of such transcripts in a previous letter to the client. 393 Md. at 410–13, 903 A.2d at 375–77 (emphasis added).

In the present case, Respondent contends that the record lacks clear and convincing evidence that he *knowingly* made a false statement to Bar Counsel. The record contains evidence of a May 12, 2014 letter that Respondent sent to Bar Counsel, in which Respondent wrote that he informed Ms. Covington that the representation was terminated "upon" his appointment as an Administrative Law Judge, that Ms. Covington left him with the impression that she wanted to retain alternative counsel, and that he was "waiting" to hear from Ms. Covington. On August 12, 2014, Respondent sent an email via his attorney to Bar Counsel and stated that he was "waiting for Ms. Covington to contact him" but "heard nothing from her." The record also contains evidence that Respondent did not inform Ms. Covington of the termination of representation until May, and that Ms. Covington called Respondent nine times between July 1, 2013 and September 1, 2013. However, Respondent testified that he cannot recall whether he received the calls, and the record reflects that Respondent did not speak with Ms. Covington during this period. Furthermore, Respondent testified that he did not review his notes on the Covington matter prior to responding to Bar Counsel in his May 12, 2014 letter. There is no clear and convincing evidence that Respondent intentionally lied to Bar Counsel about his contact with Ms. Covington. Under these circumstances, we decline to conclude that clear and convincing evidence supports a finding that Respondent made a knowing and intentional misrepresentation to Bar Counsel on May 12, 2014 or August 12, 2014.

As in *Mooney,* we find the record lacks clear and convincing evidence that Respondent violated Rule 8.1(a). Although Respondent should not have relied upon his memory of the events in drafting his Response to Bar Counsel, we find such conduct to

23

amount to, at most, a negligent misrepresentation of the facts. We note that Respondent should have kept notes and should have memorialized in writing his communications with Ms. Covington, especially the communication at issue regarding the termination of representation. We further note that Respondent should have reviewed whatever documents he possessed in the Covington case file prior to responding to Bar Counsel. However, the evidence in this case reveals Respondent's misrepresentation as to the time and content of the conversation he had with Ms. Covington was, at most, the result of sloppy organization and a lack of diligence in obtaining accurate information to convey to Bar Counsel. Nothing in the record rises to the level of clear and convincing evidence that Respondent *knowingly* misrepresented the facts to Bar Counsel. We therefore do not conclude from the record that the facts warrant the conclusion based on clear and convincing evidence that Respondent made any representation with present knowledge that it was false. We sustain Respondent's exception.

The hearing judge also found that Respondent violated Rule 8.1(b) because on multiple occasions, Bar Counsel made more than one request for information due to Respondent's delay in responding to initial requests. Although the evidence is undisputed that Respondent failed to *timely* respond to Bar Counsel, Respondent did eventually respond to every request for information made by Bar Counsel. Rule 8.1(b) imposes no time limit. The Rule simply provides that an attorney shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]" MLRPC 8.1(b). We hold that the record lacks clear and convincing evidence that Respondent violated Rule 8.1(b) and sustain this exception.

24

The hearing judge concluded that Respondent violated Rule 8.4(a) by committing misconduct in violation of several other Rules. Respondent files no exception to the conclusion that he violated Rule 8.4(a). Each of Respondent's violations of the other Rules serve as a basis for a violation of 8.4(a). Accordingly, there is clear and convincing evidence that Respondent violated 8.4(a). *Attorney Grievance Comm'n v. Nelson*, 425 Md. 344, 363, 40 A.3d 1039, 1050 (2012) ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached.").

Respondent challenges the hearing judge's conclusion that Respondent violated Rule 8.4(c). The hearing judge premised his finding of a Rule 8.4(c) violation upon his finding that Respondent violated Rule 8.1(a) by making intentional misrepresentations to Bar Counsel. Respondent contends there was no violation of Rule 8.4(c) primarily for the same reasons he contends that he did not violate Rule 8.1(a). We have previously established through our case law that a violation of 8.4(c) must be the result of *intentional* misconduct. *Attorney Grievance Comm'n v. Mungin*, 439 Md. 290, 310, 96 A.3d 122, 133 (2014) ("It is well settled that this Court will not find a violation of M[L]RPC 8.4(c) when the attorney's misconduct is the product of negligent rather than intentional misconduct.") (quoting *Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 684, 802 A.2d 1014, 1026 (2002)). Because, as stated in our discussion of Rule 8.1(a), we conclude that Respondent made a misrepresentation that was at most negligent, we hold that the record lacks clear and convincing evidence that Respondent violated Rule 8.4(c). *See id.* Accordingly, we sustain Respondent's exception.

25

We next address the hearing judge's conclusion that Respondent's misconduct as a whole was in violation of Rule 8.4(d). Respondent makes no formal exception to the finding that he violated Rule 8.4(d) but contends that Ms. Covington did not suffer monetary loss and "the administration of justice was not otherwise impaired in anyway." the hearing judge found that Respondent's conduct taken as a whole served to bring the legal profession into disrepute. This Court has noted that "[c]onduct which is likely to impair public confidence in the profession, impact the image of the legal profession and engender disrespect for the court is conduct prejudicial to the administration of justice." *Attorney Grievance Comm'n v. Agbaje*, 438 Md. 695, 717, 93 A.3d 262, 274 (2014). We have found lawyers to have violated "[Rule] 8.4(d) by, among other things, failing to represent a client in an adequate manner and failing to keep a client informed about the status of a case." *Attorney Grievance Comm'n v. Landeo*, 446 Md. 294, 343, 132 A.3d 196, 225 (2016) (internal quotations omitted). In *Attorney Grievance Comm'n v. Heung Sik Park*, we noted that "Respondent's failure to pursue Mrs. Min's applications diligently and competently, as well as his failure to maintain sufficient communication with Mrs. Min, as demonstrated by our conclusion that Respondent violated MLRPC 1.1, 1.3, and 1.4, constitutes conduct that brings disrepute to the legal profession, in violation of MLRPC 8.4(d)." 427 Md. 180, 194, 46 A.3d 1153, 1161 (2012). Here, Respondent engaged in conduct involving negligent misrepresentations, failed to diligently and competently represent Ms. Covington, and failed to maintain sufficient communication with Ms. Covington. We therefore hold there is clear and convincing evidence that Respondent violated Rule 8.4(d).

26

## Sanction

Having determined that Respondent violated the Rules, we now turn to our discussion of the appropriate sanction for Respondent's misconduct. The Attorney Grievance Commission recommends a sanction of disbarment while Respondent urges that a sanction of a thirty day suspension is appropriate. The purpose of sanctioning an attorney is not to punish the attorney, but to "protect the public and the public's confidence in the legal profession[.]" *Attorney Grievance Comm'n v. Brigerman*, 441 Md. 23, 41, 105 A.3d 467, 477 (2014) (quotation omitted). "[T]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Stinson*, 428 Md. 147, 196, 50 A.3d 1222, 1251 (2012) (quoting *Attorney Grievance Comm'n v. Awuah*, 346 Md. 420, 435, 697 A.2d 446, 454 (1997)). The question of the severity of an appropriate sanction "depends on the circumstances of each case, the intent with which the acts were committed, the gravity, nature, and effect of the violations, and any mitigating factors." *Attorney Grievance Comm'n v. Ward*, 394 Md. 1, 33, 904 A.2d 477, 496 (2006).

In *Attorney Grievance Comm'n v. Sperling*, we cited several aggravating factors from Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions, upon which we rely when determining an appropriate sanction:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency;

27

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution.

432 Md. 471, 495–96, 69 A.3d 478, 492 (2013). In the case before us, the hearing judge found that this disciplinary matter presented eight aggravating factors including prior discipline, selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, submission of false statements and false testimony, lack of remorse, and refusal to accept the wrongful nature of conduct. Respondent has a prior reprimand for previously violating Rules 1.3 and 1.4. Respondent demonstrated a pattern of misconduct in this case insofar that his misconduct continued for approximately one year. Further, Respondent committed multiple offenses by violating numerous rules on several occasions. Respondent's experience in the practice of law generally for approximately twenty-two years is an aggravating factor.

The hearing judge explained that Respondent was motivated by a dishonest and selfish motive to cover up his lack of diligence in his making of misrepresentations to Bar Counsel. Because, as explained above in our discussion of Rule 8.1(a), there is no clear and convincing evidence in the record that Respondent made a *knowing* misrepresentation, we do not adopt the hearing judge's finding of this aggravating factor. As discussed, the record lacks clear and convincing evidence as to Respondent's intent. Accordingly, we do not conclude from the record that Respondent had a selfish or dishonest motive. For the same reasons, we do not adopt the hearing judge's findings of submission of false

28

statements and false testimony. Furthermore, for the same reasons that we concluded that Respondent did not violate Rule 8.1(b), we do not adopt the hearing judge's finding of bad faith obstruction.

Respondent excepts to the hearing judge's omission of the presence of mitigating factors. Specifically, Respondent draws this Court's attention to the fact that although, at the time of the violation, Respondent had been a member of the Bar for over twenty years, Respondent had little experience in the field of civil matters as most of his career was spent working for the State's Attorney Office. Moreover, Respondent was a relatively new solo-practitioner[5] at the time he took Ms. Covington's case. We overrule Respondent's exception to the hearing judge's omission as to these factors because under ABA Standard 9.32, the relevant factor is "inexperience in the practice of law[,]" not within a particular area of practice. Respondent's limited experience in the civil law area does not render him inexperienced in the practice of law generally. Moreover, Ms. Covington's case did not present a complex claim but was rather a simple personal injury case. Finally, Respondent asks this Court to note that no prejudice occurred to Ms. Covington's case as Ms. Covington was able to obtain a satisfactory settlement of her claim. This mitigating factor weighs against a more severe sanction because it demonstrates a lack of actual harm to the client. We find support for this mitigating factor based upon a preponderance of the evidence and affirm Respondent's exception as to its omission by the hearing judge. Additionally, we note that Respondent's concessions as to his violations of Rules 1.4 and

---

[5] Respondent opened his solo practice in 2009.

29

1.16 militate against the hearing judge's finding that Respondent refused to acknowledge the wrongful nature of his conduct.

Having addressed the aggravating and mitigating factors in this case, we turn to case law where attorneys committed violations similar to those committed by Respondent in an effort to determine the most appropriate sanction. In *Brigerman*, we acknowledged that "[w]e have imposed the sanction of disbarment in cases involving flagrant neglect of client affairs, including failures to communicate with clients or respond to inquiries from Bar Counsel[.]" 441 Md. at 41, 105 A.3d at 477–78. For example, in *Attorney Grievance Comm'n v. Pinno*, a lawyer violated Rules 1.1, 1.3, 1.4, 1.16(d) and 8.4(d) over the course of five separate representations. 437 Md. 70, 85 A.3d 159 (2014). Pinno accepted fees from several clients, failed to adequately communicate with his clients, failed to appear at hearings on behalf of his clients, failed to perform work on their cases, and failed to return unearned fees. *Pinno,* 437 Md. at 75–77, 85 A.3d at 162–63. We noted that

> [t]his case demonstrates a pattern of attorney neglect that affected at least five clients and spanned two years. Mr. Pinno agreed to represent all five complainants, took fees from all five, without warning or explanation failed to pursue their matters or to appear on their behalf at scheduled court appearances, and failed to return the unearned fees.

*Pinno,* 437 Md. at 82, 85 A.3d at 166. Furthermore, "Mr. Pinno's failure to participate in the disciplinary process [was] also an aggravating factor." *Pinno,* 437 Md. at 83, 85 A.3d at 166. Accordingly, we found that disbarment was appropriate. *Id.*

Unlike *Pinno*, Respondent did not accept fees from Ms. Covington. Also unlike *Pinno*, Respondent's conduct was isolated to one client, who seemingly "fell through the

30

cracks"[6] during Respondent's transition from the bar to the bench. Furthermore, Respondent cooperated and participated in the investigation and disciplinary process. Thus, Respondent's conduct is far less egregious than that of the lawyer in *Pinno* and we conclude disbarment would be too severe a sanction to impose in this case.

In *Landeo,* Landeo, an immigration attorney, took the cases of three distinct clients and failed to perform any substantial work on the cases after accepting a fee, failed to keep her clients reasonably informed or respond to their inquiries, misappropriated funds, and failed to properly terminate representation. 446 Md. at 307–17, 132 A.3d at 204–09. We found that Landeo, like Respondent, violated MLRPC 1.1, 1.3, 1.4(a), 1.4(b), 1.16(d) and 8.4(d) with respect to three unrelated representations. *Landeo*, 446 Md. at 306, 132 A.3d at 203. Landeo additionally violated MLRPC 1.5(a), 1.15(a), and 1.15(c). *Id.* Present in that case were several aggravating factors including a pattern of misconduct, multiple violations, refusal to acknowledge the wrongful nature of conduct, vulnerable victims, and substantial experience in the practice of law. *Landeo*, 446 Md. at 350–51, 132 A.3d at 229. Therefore, we determined that the appropriate sanction was indefinite suspension, noting that "although certainly egregious and displaying a gross lack of competence, and a pattern of a lack of diligence and adequate communication, Landeo's misconduct does not rise to

---

[6] At the hearing, Respondent testified that around the time he requested to be placed on exempt status with the Client Protection Fund, he met with a mentor to seek advice on winding up his law practice. Respondent testified that he then called each client to inform him or her that Respondent had been appointed as an Administrative Law Judge and could not practice law. This, in conjunction with the fact that no other client of Respondent had come forward with a complaint suggest that Respondent's neglect of Ms. Covington's case and his failure to properly terminate the representation were isolated.

31

a level warranting disbarment." *Landeo*, 446 Md. at 354, 132 A.3d at 231.

We conclude that Respondent's case is more similar to *Landeo* than it is to *Pinno* and conclude that indefinite suspension is a more appropriate sanction. We have held that "[i]ndefinite suspension from the practice of law is the proper sanction where the attorney violates M[L]RPC 1.3, 1.4, 8.1(b), and 8.4(d) by failing to communicate with the client and failing to cooperate with Bar Counsel and where the attorney's conduct is not so egregious that only disbarment can adequately protect the public." *Attorney Grievance Comm'n v. Lee*, 393 Md. 546, 564–65, 903 A.2d 895, 906 (2006). "On the other hand, we also have imposed a sanction of reprimand for similar violations of the M[L]RPC where there are significant mitigating factors, such as remorse and a history of *pro bono* work by a respondent." *Lee*, 393 Md. at 565, 903 A.2d at 906–07. Here, Respondent's conduct is not so egregious that the public will only be protected if Respondent is disbarred. We decline, however, to impose a less severe sanction than indefinite suspension because we find the presence of aggravating factors and we do not find the presence of *significant* mitigating factors.

Further, as we noted in *Sperling*, "[w]hile the sanction for dishonest conduct is generally disbarment, we have not, however, always found disbarment to be the appropriate sanction when there is a misrepresentation involved, *especially when misappropriation of money is not involved*." 432 Md. at 497, 69 A.3d at 493 (emphasis added). Here, Respondent made a misrepresentation, but no misappropriation of money is involved. Thus, as we said in *Attorney Grievance Comm'n v. Litman*, "[i]ndefinite suspension, as the base sanction, is also appropriate in the present case." 440 Md. 205, 218, 101 A.3d 1050,

32

1058 (2014). Where an indefinite suspension is the base sanction as a result of misrepresentation and the attorney did not *knowingly* make false statements, we have applied a minimum sit out period of less than six months. *See Attorney Grievance Comm'n v. Khandpur*, 421 Md. 1, 26, 25 A.3d 165, 180 (2011) (imposing sanction of indefinite suspension with the right to reapply within sixty days where the misrepresentation was not intentional but was the result of laziness or ineptitude). In *Mooney*, similar to this case, we were unwilling to accept the hearing judge's finding that the attorney violated Rule 8.4(c) because the record lacked clear and convincing evidence that his misrepresentation was knowing. *Mooney*, 359 Md. at 80–81, 753 A.2d at 29–30. The attorney in *Mooney* violated MLRPC 1.1, 1.3, 1.4, 5.1, 5.3, and 8.4(a) and (b) and received a sanction of indefinite suspension with a right to reapply after ninety days. *Mooney*, 359 Md. at 98, 753 A.2d at 39. We conclude that this case is similar to *Mooney* and therefore hold that the appropriate sanction in this case is an indefinite suspension with the right to reapply for admission after ninety days. The indefinite suspension shall begin thirty days after the issuance of this opinion.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RICHARD ALLEN MOORE, II.**

33